IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RICHARD GENE GUY,

        Plaintiff,

  vs.                                                      No. CIV 08-706 JH/LFG

LT. LLOYD BURNS, Detention Officer
at Doña Ana County Detention Center,

        Defendant.

## MAGISTRATE JUDGE'S FINDINGS
## AND RECOMMENDED DISPOSITION[1]

THIS MATTER comes before the Court on a *pro se, in forma pauperis* civil rights action brought pursuant to 42 U.S.C. § 1983. Plaintiff Richard Gene Guy ("Guy") alleges in his Amended Complaint [Doc. 28] that while he was incarcerated at the Doña Ana County Detention Center ("DACDC") in Las Cruces, New Mexico, he was subjected to violations of his constitutional rights including an unjustified and unnecessarily intrusive body cavity search, and retaliation for complaining of the incident. He seeks declaratory and injunctive relief as well as compensatory and punitive damages.

Other claims were dismissed in previous orders of the Court, and all Defendants have been dismissed from this action except Lt. Lloyd Burns ("Burns"), the detention officer whom Guy alleges conducted the illegal search and then retaliated against him when he complained about it.

---

[1]Within ten (10) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommendations. A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed.

On July 30, 2009, the Court ordered Defendant Burns to file a Martinez report[2] for purposes of developing the factual or legal basis of Plaintiff's claims. The parties were notified that the Martinez report could be used for summary judgment purposes, and they were advised to submit whatever materials they consider relevant to the claims. [Doc. 43]. Guy was given 30 days after service of Burns's report within which to respond and submit materials. Burns filed his Martinez report [Doc. 47] on September 30, 2009. Guy did not file a response to the Martinez report.

The Court has reviewed all submissions by the parties in this case and recommends that summary judgment be entered in favor of Defendant Burns and that the action be dismissed.

Guy alleges that he was subjected to an unclothed cavity search at DACDC on July 15, 2008 "after being searched already," and that the search constituted an unnecessary invasion of his privacy. He states that he agreed to an unclothed body search, but not to a search which required him to spread his buttocks so an officer could look inside his body cavity for contraband. He asserts this search was done by Defendant Burns "without any reason or suspicion of contraband," but solely as a form of punishment by Burns, who was angry with Guy. [Doc. 28, at 3].

Guy further states that after he questioned the propriety of the procedure, Burns "became very angry and threatened all the inmate trustees with losing their jobs and moving back into population." He further alleges that when he filed a lawsuit, he was "put on medical leave and removed from [his job in] the kitchen as retaliation." [Id., at 4]. There is no allegation that Burns was personally responsible for putting him on medical leave, nor for having him removed from his kitchen job. Guy says that he filed a grievance, but it was ignored and he was reclassified and "moved to population" in August 2008. [Id., at 6].

---

[2]Pursuant to Martinez v. Aaron, 570 F.2d 317, 320 (10th Cir. 1978).

Guy alleges that Burns's actions constituted violations of his Fourth and Fourteenth Amendment rights. He seeks a declaration that his constitutional rights were violated, a permanent injunction ordering Burns to stop unnecessary cavity searches, and compensatory and punitive damages.

In his Martinez report, Burns states that he did not conduct the search of Guy on July 15, 2008; rather, he supervised an officer who conducted a proper visual search of Guy on or about that date. [Doc. 47, at 1]. Burns states further that Guy was employed as an inmate worker in the kitchen, a voluntary position which he was not required to accept. One condition of working in the kitchen at DACDC is that all workers are subjected to a visual search and uniform change-out at the end of each work shift. [Id.].

DACDC Policy No. 5C-06, ¶ 7 provides that: "As a condition of any work assignment, inmates are subject to visual body search before returning to their respective housing unit after a work assignment or anytime a search is deemed necessary by the shift supervisor or higher authority." [Doc. 47, Ex. A, Policy 5C-06, at 3-4]. Guy signed an authorization form for unclothed body searches, affirming that "[a]s a condition of trustee assignment, I understand that I will be subject to an unclothed body search anytime I may have an out-of-the-facility work assignment, assignment within the facility, come in contact with the public or other detainees or, when the Sergeant on Shift or higher authority deems necessary." [Doc. 47, Ex. B].

Burns states that inmates working in the kitchen are, as a matter of DACDC policy, subjected to visual searches at the end of each work shift in order to assure that no kitchen equipment is removed by the inmate workers. The purpose of this policy is to protect detention center employees and other inmates from the introduction of weapons, contraband or other prohibited material into the detention center. Burns further states that a visual search is required because an inmate working

3

in the kitchen area may seek to remove kitchen materials by hiding them on or inside the inmate's body.

DACDC Policy 2C-03 describes the four types of searches that may be performed on inmates and sets forth the circumstances warranting each type of search. A "visual search" is less intrusive than a "body cavity search." The former is "the visual examination of an individual's naked body for weapons, drugs or other contraband. A visual search requires removal of all clothing." The latter is "a search of an individual's body cavity (*e.g.*, anus, vagina, nose etc.) that involves touching or probing with hands or an instrument." [Doc. 47, Ex. A, Policy 2C-03, at 2].

DACDC policy provides clearly that all inmates returning to the secure area of the facility from work detail are required to submit to a visual search. [Id., at 4; Doc. 47, Ex. A, Policy 5C-06, at 3-4]. In addition, an inmate on work detail may be visually searched at any time during detail when reasonable suspicion, that can be articulated in writing, exists. [Doc. 47, Ex. A, Policy 2C-03, at 10].

Policy further provides that searches may be conducted only by staff trained in techniques that protect both inmates and staff from bodily harm and civil liability, and that the subject should not be touched any more than is necessary to conduct a comprehensive search. Searches are not to be used to degrade, harass, embarrass or punish an inmate. Visual searches may be conducted only by staff of the same gender as the inmate and, when possible, two staff members of the same gender as the inmate should be present during visual searches. [Id., at 5, 7]. Burns states in his report that Guy was never subjected to a body cavity search. Rather, a visual search was performed in accord with DACDC policy. Burns was present while another officer actually conducted the search.

Guy alleges in his Complaint that, although he agreed to an unclothed body search, he did not agree to "a search where you have to spread your buttocks so an officer can look inside your

4

cavity." [Doc. 28, at 3]. The detailed description of a "visual search" set forth in Policy 2C-03 includes visual examination of the subject's genital area, including the following: "To obtain a clear view of the rectum/vaginal area, have the subject to bend over and spread the rectum." [Doc. 47, Ex. A, Policy 2C-03, at 8]. Thus, although Guy says "[t]his was the first time this happen[ed]," such a search is authorized by the policy.

Guy states that the search was done without any suspicion of contraband, but that is not required by the policy; indeed, the policy requires a visual search of each inmate who works in the kitchen, at the end of each shift, and the definition of "visual search" includes the buttock-spreading technique employed in the search in question. Guy considers this a "body cavity search," but his description of the search, as conducted, falls within the permitted boundaries of the "visual search" authorized, indeed required, by the policy. He alleges in his complaint that the description of a "visual search" in the policy does not include "spreading your buttocks for a visual inspection." This is incorrect; as noted above, the written policy explicitly includes this technique as one part of the visual search.

The Court finds that no constitutional violation occurred with respect to the search and therefore recommends that this claim be dismissed. In addition, the record indicates that Guy never filed a grievance with respect to his claim of an unnecessary and intrusive body search; thus, his claim must be dismissed for failure to exhaust administrative grievances. 42 U.S.C. § 1997e(a); Porter v. Nussle, 534 U.S. 516, 524 (2002).

Guy also brings a claim of retaliation against Burns. He alleges that:

> After questioning this procedure [*i.e.*, the technique employed in the search] Lt. . . . Burns became very angry and threatened all the inmate trustees with losing their jobs and moving back into population. Then when plaintiff filed a lawsuit and helped 6 other inmates with their lawsuit Plaintiff was put on medical leave and

5

removed from the kitchen as retaliation.

[Doc. 28, at 4].

In his Martinez report, Burns states that Guy was removed from his kitchen job for medical issues raised by Guy himself, and not for reasons of retaliation. He states that the sole reason for Guy's removal was a sick call request submitted by Guy in late July 2008 in which he complained of several medical problems.

Guy's sick call request of that date, attached as an exhibit to his Amended Complaint [Doc. 28], states that he has lower back pain with prolonged standing or sitting and a burning sensation in his left thigh, and that his feet and hands "go to sleep." He states further that he fell in the kitchen three weeks earlier and has migraine headaches from the head injury. He also complained of chemical rashes from cleaning products, and a change to an ineffective medication for his mental health problems which caused mental anguish, anger and depression. In response to the sick call request, Guy was scheduled for an appointment with a mental health care provider.

Burns also includes with his Martinez report documentation of Guy's "Housing Moves," which includes a note that Guy had been moved "until medical re-evaluates for kitchen." [Doc. 47, Ex. C].

The above evidence indicates that Guy's removal from his kitchen duties was based on medical considerations raised by Guy himself. In addition, Guy does not allege that Burns was the individual responsible for his removal from the kitchen job. Further, the record shows no evidence of a grievance filed by Guy with respect to his removal from kitchen employment, nor with respect to his claim that he was removed for retaliatory reasons.

The Court finds no constitutional violation arising from Guy's allegations against Burns and concludes that Burns is entitled to summary judgment.

## **Recommended Disposition**

That the Complaint be dismissed and that this action be dismissed with prejudice.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
United States Magistrate Judge